**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GERMAN ALEXIS MANCIA SAGASTUME,** | : | |
| **Petitioner,** | : | **CIVIL ACTION NO. 3:26-2293** |
| **v.** | : | **(JUDGE MANNION)** |
| **WARDEN, CLINTON COUNTY CORRECTIONAL FACILITY, *et al.*,** | : | |
| **Respondents.** | : | |

## MEMORANDUM

Pending before the Court is German Alexis Mancia Sagastume's ("Petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241, (**Doc. 1**). For the reasons stated herein, the petition will be **GRANTED**.

## I. BACKGROUND

Petitioner is a citizen and native of Honduras. (Doc. 6-2 at 1). Petitioner entered the United States at an unknown location without being admitted or inspected by an immigration officer. *Id.* at 3. On September 27, 2021, Petitioner was apprehended by the United States Border control and paroled from custody. *Id.* On December 17, 2021, he reported to the ICE office in Newark, New Jersey and was served with an I-862 application and Notice to

Appear ("NTA") before an immigration judge ("IJ"), and placed in the Alternative to Detention ("ATD") program. *Id.*; *see also* (Doc. 6-3).

Petitioner remained in the ATD program for at least three years. (Doc. 6-2 at 3). Respondents allege that during Petitioner's enrollment in the ATD program, he failed to report on three occasions: December 23, 2024, January 13, 2024, and February 10, 2025. *Id.* However, Petitioner states that he "complied with all requirements of his immigration proceedings." (Doc. 1 at 5). On February 23, 2026, IJ Joyce Varzandeh denied Petitioner's applications for asylum, withholding of removal pursuant to Immigration and Nationality Act ("INA") §241(b)(3)(A), and post-conclusion voluntary departure pursuant to INA §240B(b). (Doc. 6-4 at 2). Judge Varzandeh ordered Petitioner removed. *Id.* On March 18, 2026, Petitioner appealed Judge Varzandeh's decision; the appeal remains pending. (Docs. 6-2 at 3; 6-5).

Petitioner has no criminal history whatsoever. (Doc. 6-2 at 3). He is the father of three minor children, one of whom has special needs and depends heavily on Petitioner for support. (Doc. 1 at 5). Petitioner has authorization to work in the United States. *Id.* at 4.

On July 30, 2026, the Riverside Police Department apprehended Petitioner. *Id.* at 2. He has remained detained since. On August 10, 2026,

Petitioner filed the instant petition. (Doc. 1). On August 25, 2026, Respondents filed a response to the petition. (Doc. 6). Petitioner has not filed a traverse. Accordingly, the petition is ripe for disposition.

## II. LEGAL STANDARD

Under 28 U.S.C. §2241, district courts have the authority to grant writs of habeas corpus when a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(1), (3).

Furthermore, "[i]t is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody." *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972). However, "[w]ith respect to certain factual issues, the burden of proof may be shifted to the state because of specific policy considerations or because the available evidence is likely to be in the hands of the state." *Id.*

## III. DISCUSSION

### a. Jurisdiction

The Court's authority to hear noncitizen habeas petitions under 28 U.S.C. §2241 is limited in some circumstances by 8 U.S.C. §§1252(g), (b)(9), and (a)(2)(B)(ii).

§1252(g) states that "[e]xcept as provided in this section and notwithstanding any other provisions of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. §1252(g). Here, the Court's jurisdiction is not barred by §1252(g) as the petition does challenge the commencement of removal proceedings, the Attorney General's decision to adjudicate, nor the execution of a removal order. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (finding that §1252(g)(2) divests the Court of jurisdiction "only to [these] three discrete actions[.]").

§1252(b)(9) states that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceedings brought to remove an alien from the United States . . . shall be available only on judicial review of a final order [of removal]." 8 U.S.C. §1252(b)(9). Here, the Court's jurisdiction is not barred by §1252(b)(9) as the petition does not seek review of any law or fact arising from a removal proceeding. *See E.O.H.C. v. Sec'y United States Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (finding that §1252(b)(9) "does not reach claims that are independent of, or wholly collateral to, the removal process[.]").

§1252(a)(2)(B)(ii) prohibits district courts from reviewing discretionary detention choices of the Attorney General or Secretary of Homeland Security. 8 U.S.C. §1252(a)(2)(B)(ii). Here, the Court's jurisdiction is not barred by §1252(a)(2)(B)(ii) as the petition does not challenge a discretionary detention choice. *See Patel v. O'Neil*, 2025 WL 3516865, at *3 (M.D.Pa. Dec. 8, 2025) ("section 1252(a)(2)(B)(ii) is inapposite because the Respondents' 'statutory detention power is "not a matter of discretion" to which §1252(a)(2)(B)(ii) applies[.]'") (internal citations omitted).

Finally, courts considering the issue of whether a petitioner is being wrongfully detained without a bond hearing "have almost universally held that they have jurisdiction," and, therefore, that §§1252(g), (b)(9), and (a)(2)(B)(ii) do not apply. *Patel*, 2025 WL 3516865 at *3.

**b. Exhaustion of administrative remedies**

"A petitioner challenging agency action must generally first exhaust administrative remedies; however, in habeas proceedings, 'exhaustion exists as a judicially created doctrine applied at the Court's discretion.'" *Vadel v. Lowe*, 2025 WL 3772059, at *3 (M.D.Pa. Dec. 31, 2025) (quoting *Kashranov v. Jamison*, 2025 WL 3188399, at *3 (E.D.Pa. Nov. 14, 2025)). Here, further administrative review would be pointless, as Petitioner is detained under 8 U.S.C. §1225(b)(2)(A), which precludes immigration judges

from holding a bond hearing. *See id.*; *see also Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) (holding that an immigration judge "has no authority to consider bond requests for any person who entered the United States without admission.").

**c. 8 U.S.C. §1226(a) applies to Petitioner**

Respondents argue that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. §1225(b)(2)(A), which does not allow for courts to hold a bond hearing. Petitioner, on the other hand, argues that his continued detention violates due process rights.

Courts nationwide, including this Court, have been dealing with the very issue presented in this case. Namely, whether a noncitizen habeas petitioner who has been residing in the United States for some time is subject to the mandatory detention provision of §1225(b)(2)(A). In *Barbosa da Cunha v. Freden*, the United States Court of Appeals for the Second Circuit considered the issue and ruled that it is "clear that Section 1226(a) governs detention of noncitizens like Petitioner. Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter." 175 F.4th 61, 69 (2d Cir. 2026). In reaching this conclusion, the court noted that its "holding is

consistent with the decisions of over 370 district judges across the Nation who (as of mid-February 2026) have also rejected the government's position. In other words, over ninety percent of district judges have sided with Petitioner." *Id.* at 71.

Since *Barbosa da Cunha*, several other circuit courts have joined the Second Circuit in ruling that §1226(a) applies. *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Santillan Quiroz v. Mullin*, 2026 WL 1876709 (10th Cir. 2026); *Hernandez Alvarez v. Warden, Federal Detention Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026); *cf. Castañon-Nova v. United States Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025) ("*Castañon-Nova I*") (holding that a petitioner is likely to succeed on the merits of a claim for wrongful detention under 8 U.S.C. §1225(b)(2)(A)); *see also Castañon-Nova v. United States Dep't of Homeland Sec.*, 175 F.4th 828 (7th Cir. May 5, 2026) ("*Castañon-Nova II*").

Most significantly for this Court, the United States Court of Appeals for the Third Circuit recently joined the consensus interpretation. *See Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223, at *3 (3d Cir. Aug. 28, 2026) ("To fall within §1225(b)(2)(A)'s ambit, an 'applicant for admission' must engage in present or ongoing action to gain 'admission,' that is, 'lawful entry . . . into the United States after inspection

and authorization by an immigration officer[.]'"). The *Buele Morocho* Court held that "[b]ecause §1225(b)(2)(A) does not apply to Petitioners as they were not detained at the border, their detentions were unlawful under that provision of the INA." *Id.* at *8. The undersigned will continue to join in this consensus interpretation in light of the Third Circuit's precedential decision.

For §1225(b)(2)(A) to apply: "(1) there must be an 'examining immigration officer' who determines; (2) that an 'applicant for admission[;]' (3) is 'seeking admission[;]' and (4) 'not clearly and beyond a doubt entitled to be admitted.'" *Bethancourt v. Soto*, 807 F.Supp.3d 397, 406 (D.N.J. Oct. 22, 2025) (citing 8 U.S.C. §1225(b)(2)(A)). "[S]eeking admission" requires "active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry." *Gonzalez Centeno v. Lowe*, 2026 WL 94642, at *3 (M.D.Pa. Jan. 13, 2026) (quoting *Quispe v. Rose*, 819 F.Supp.3d 362, 370 (M.D.Pa. 2025)); *see also Buele Morocho,* 2026 WL 2546223, at *3 ("[F]or §1225(b)(2)(A) to apply, the noncitizen must do more than be an 'applicant for admission.'"). An individual affirmatively "seeking admission" should not be confused as being the same as an "applicant for admission." *See Patel*, 2025 WL 3516865 at *5 (finding that such an interpretation of "seeking admission" violates the rule against surplusage). Therefore, because "seeking admission" applies to individuals in an

affirmative act, §1225(b)(2)(A) does not apply to "noncitizens . . . who have resided in the United States for years." *Id.*; *see also Buele Morocho,* 2026 WL 2546223, at *3.

Furthermore, while the "entry fiction" doctrine:

> [A]llows the government to treat physical entrants as if still "on the threshold' if they are 'detained shortly after lawful entry" . . . no one could seriously contend that it applies to a noncitizen like [the petitioner] who has been living in the United States for [an extended period of time]. Under settled Supreme Court precedent, "aliens who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."

*Barbosa da Cunha*, 175 F.4th at 86 (emphasis in original).

As for §1226(a), it allows for the Attorney General to arrest and detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. §1226(a). Pending that decision, the Attorney General "(1) may continue to detain the arrested alien;" and (2) "may release the alien on . . . bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or . . . conditional parole." 8 U.S.C. §1226(a)(1)-(2). When an alien is detained under §1226(a), they are still entitled to a bond hearing where they can argue why they should

be released from detention pending a final order of removal. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); *see also Borbot v. Warden Hudson County Correctional Facility*, 906 F.3d 274, 277-80 (3d Cir. 2018) (holding that individuals detained under §1226(a) are entitled to a bond hearing but not entitled to a second bond hearing after their first has been denied).

Here, Petitioner has been living in the United States since at least September 2021. (Doc. 6-2 at 3). He was taken into immigration custody on July 30, 2026. *Id.* at 2 Therefore, he is not "seeking admission" as defined by §1225(b)(2)(A) and the caselaw. Accordingly, 8 U.S.C. §1226(a) applies.

**d. Petitioner's detention under 8 U.S.C. §1225(b)(2)(A) violates due process**

The Fifth Amendment protects against deprivation "of life, liberty, or property without due process of law." U.S. CONST. amend. V. This protection "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

To determine whether a habeas petitioner's detention under §1225(b)(2)(A) violates due process, courts weigh three factors: (1) "the private interest that will be affected by the official action[;]" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the

probable value, if any, of additional or substitute procedural safeguards[;]" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, the "most elemental of liberty interest[s]—the interest in being free from physical detention—" is implicated. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "[A]s in *Buele Morocho*, we conclude that 'mandatory detention implicates [Petitioner's] constitutionally protected interest in avoiding physical restraint.'" *Siglam v. Craig Lowe, et al.*, No. 3:26-CV-2424, 2026 WL 2656292, at *5 (M.D.Pa. Sept. 9, 2026) (quoting *Buele Morocho,* 2026 WL 2546223, at *9 (internal citations omitted)).

Second, Petitioner's erroneous detention under §1225(b)(2)(A) comes with a lack of procedural safeguards, including the opportunity for a bond hearing, which makes it extraordinarily difficult to challenge his detention. *Cunin v. McShane*, 2025 WL 3542999, at *2 (M.D.Pa. Dec. 10, 2025) ("There is a certainty—not merely a risk—that the failure to grant [petitioner] a bond hearing would unlawfully deprive him of the opportunity to make the case for his release and incarcerate him indefinitely[.]"). "'[T]he absence of an opportunity for a neutral decisionmaker to assess whether [Petitioner] [is] dangerous or [a] flight risk[ ] presents a high risk of erroneously depriving

[Petitioner] of [his] liberty interest.'" *Siglam*, 2026 WL 2656292, at *5 (quoting *Buele Morocho,* 2026 WL 2546223, at *9 (internal citations omitted)).

Third:

> [T]he Government's legitimate interest in preventing the release of dangerous noncitizens and those who might fail to appear at future hearings does not outweigh the other two factors here, particularly when [Petitioner] [was] detained absent evidence that [he] is dangerous or a flight risk, and the Government has not argued that [a] bond hearing[ ] [is] unduly burdensome.

*Buele Morocho*, 2026 WL 2546223, at *10. (internal citations omitted). While the Government has an interest in detaining noncitizens "to ensure [their] appearance . . . at future immigration proceedings and to prevent danger to the community," there is no such need here. *Quispe v. Rose*, 2025 WL 3537279, at *7 (M.D.Pa. Dec. 10, 2025) (citing *Zadvydas*, 533 U.S. at 690). To the extent Respondents claim that Petitioner failed to appear for three ATD check-ins, they provided no documentation from Petitioner's reporting record, and even if they had, three missed check-ins over the course of more than three years does not necessarily render Petitioner a flight risk. Importantly, Petitioner has no criminal record whatsoever, maintains employment, and fathers children in the United States. Respondents

provided no evidence suggesting that he is a danger to the community. Petitioner also has a pending appeal before the Board of Immigration Appeals. Accordingly, the Court finds that Petitioner has no incentive to flee.

Upon weighing the *Mathews* factors, the Court finds that Petitioner's continued detention under §1225(b)(2)(A) violates his procedural due process rights.

**e. EAJA costs and fees**

To the extent it applies, Petitioner will be permitted to file a motion for costs and fees pursuant to the Equal Access to Justice Act ("EAJA") within thirty days of the entry of final judgment in this case. *See Michelin v. Warden Moshannon Valley Correctional Center*, 169 F.4th 418 (3d Cir. 2026) (holding that a petition for a writ of habeas corpus from immigration detention under §2241 is an EAJA "civil action," entitling petitioners to attorneys' fees and costs if the Government's position was not "substantially justified[.]"). The Court notes that counsel entered his appearance *after* the petition was filed.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus under 28 U.S.C. §2241 will be **GRANTED**. Respondents will be ordered to immediately release Petitioner and will be permanently enjoined from re-detaining him under 8 U.S.C. §1225(b). Respondents will also be

temporarily enjoined from re-arresting Petitioner for a period of fourteen days to ensure that this habeas remedy is effective.

If Respondents later detain Petitioner under 8 U.S.C. §1226, they will be required to provide him with notice and, within ten days, a bond hearing before an immigration judge, who shall provide an individualized assessment as to whether he poses a flight risk or a danger to the community. If Petitioner is re-detained under §1226 and Respondents fail to schedule a timely bond hearing, he will be permitted to reopen this matter.

Finally, Respondents will be directed to file a declaration or affidavit pursuant to 28 U.S.C. §1746 confirming that Petitioner has been released from custody. An appropriate order shall be issued.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 9/21/26
26-2293-01